**Fill in this information to identify the case:**

Debtor 1    Thomas C. Stafford
(Spouse, if filing)

United States Bankruptcy Court for the EASTERN District of Pennsylvania

Case number   23-10050-MDC

Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

| | | |
|---|---|---|
| 1. Who is the current creditor? | **The Bank of New York Mellon, F/K/A The Bank of New York as trustee for registered Holders of CWABS, Inc., Asset-Backed Certificates, Series 2007-12** | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor | |
| 2. Has this claim been acquired from someone else? | ☒ No<br>☐ Yes.  From whom? _____ | |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>**Carrington Mortgage Services, LLC**<br>Name<br><br>**1600 South Douglass Road**<br>Number          Street<br><br>**Anaheim, CA 92806**<br>City          State          Zip Code<br><br>**800-561-4567**<br>Contact phone<br><br>Contact Email | **Where should payments to the creditor be sent?** (if different)<br><br>**Carrington Mortgage Services, LLC**<br>Name<br><br>**1600 South Douglass Road**<br>Number          Street<br><br>**Anaheim, CA 92806**<br>City          State          Zip Code<br><br>**800-561-4567**<br>Contact phone<br><br>Contact Email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |
| 4. Does this claim amend one already filed? | ☒ No<br>☐ Yes.  Claim number on court claims registry (if known)_____     Filed on _____<br>                                                                                                                                           MM  /  DD  /  YYYY | |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No<br>☐ Yes.  Who made the earlier filing?  _____ | |

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

| | | |
|---|---|---|
| 6. | Do you have any number you use to identify the debtor? | ☐ No ☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor **6581** |

7. **How much is this claim?**   $1,000,762.97

Does this amount include interest or other charges?

☐ No
☒ Yes Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001 (c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Money Loaned**

9. **Is all or part of the claim secured?**

☐ No
☒ Yes.   The claim is secured by a lien on property.
Nature of property: 6491 Woodbine Avenue  Philadelphia, PA 19151

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection:   **Deed of Trust, Mortgage, Note**
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:              $_____.

Amount of the claim that is secured:   **$1,000,762.97**

Amount of the claim that is unsecured:  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: **$276,252.29**

Annual Interest Rate (when case was filed)   4.12500%

☒ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☒ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**      $_____

11. **Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property: _____

242

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check all that apply:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B) | |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(   ) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    **03/02/2023**
                     MM / DD / YYYY

**/s/ Brian C. Nicholas Esquire Attorney ID# 317240**

Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | **Brian C. Nicholas** | | |
| | First name | Middle name | Last name |
| Title | **Bankruptcy Attorney** | | |
| Company | **KML Law Group, P.C.** | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | **701 Market Street, Suite 5000** | | |
| | Number    Street | | |
| | **Philadelphia** | **PA** | **19106** |
| | City | State | ZIP Code |
| Contact phone | **201-549-5366** | Email | **bnicholas@kmllawgroup.com** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Thomas C. Stafford | CHAPTER |
| Debtor(s) | NO. 23-10050-MDC |

CERTIFICATE OF SERVICE

I, the undersigned, attorney for The Bank of New York Mellon, F/K/A The Bank of New York as trustee for registered Holders of CWABS, Inc., Asset-Backed Certificates, Series 2007-12 do hereby certify that true and correct copies of the foregoing Proof of Claim have been served <u>March 02, 2023</u>, by electronic filing upon those listed below:

<u>Attorney for Debtor(s)</u>
ZACHARY PERLICK
1420 Walnut Street
Suite 718
Philadelphia, PA 19102

***Bankruptcy Trustee***
Kenneth E. West
Office of the Chapter 13 Standing Trustee (VIA ECF)
1234 Market Street - Suite 1813
Philadelphia, PA 19107

Date: <u>March 02, 2023</u>

<u>**/s/Brian C. Nicholas Esquire**</u>
Brian C. Nicholas Esquire
Attorney I.D. 317240
KML Law Group, P.C.
BNY Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106
201-549-5366
bnicholas@kmllawgroup.com

Bankruptcy Proof Of Claim - Form B 410A

**Mortgage Proof of Claim Attachment**

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|
| Case number: 23-10050 | Principal balance: | $841,776.09 | Principal & interest due: | $217,082.00 | Principal & interest: | $5,427.05 |
| Debtor 1: THOMAS C STAFFORD | Deferred balance: | $0.00 | Prepetition fees due: | $6,860.31 | Monthly escrow: | $1,391.57 |
| Debtor 2: | Interest due: | $109,318.25 | Escrow deficiency for funds advanced: | $42,808.32 | Private mortgage insurance: | $0.00 |
| | Fees, costs due: | $6,860.31 | Projected escrow shortage: | $9,501.66 | Total monthly payment: | $6,818.62 |
| Last 4 digits to identify: 6581 | Escrow deficiency for funds advanced: | $42,808.32 | | | | |
| Creditor: THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC., ASSET-BACKED | Less total funds on hand: | $0.00 | Less funds on hand: | $0.00 | | |
| Servicer: Carrington Mortgage Services, LLC | Total debt: | $1,000,762.97 | Total prepetition arrearage: | $276,252.29 | | |
| Fixed accrual/daily simple interest/other: 4.12500% Fixed | | | | | | |

Bankruptcy Proof Of Claim - Form B 410A

**Part 1 : Loan Payment History from First Date of Defau[lt]**

| Date | Contractual Payment amount | Funds Received | Amount Incurred | Description | Contractual Due Date | Prin,int& esc past due balance | Amount to Interest | Amount to Escrow | Amount to fees or charges | Unapplied Funds | Principal Balance | Accrued Interest Balance | Escrow Balance | Fees/Charges Balance | Unapplied funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/1/2019 | $6,588.10 | | $6,588.10 | 10/01/2019 Monthly Payment Incurred | | $6,588.10 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | $6,300.55 | $0.00 | $0.00 |
| 10/1/2019 | | | | Loan Modification | | $6,588.10 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | $6,300.55 | $0.00 | $0.00 |
| 10/18/2019 | | | | | | $6,588.10 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | $5,781.93 | $0.00 | $0.00 |
| 11/1/2019 | $6,631.31 | | $6,631.31 | 11/01/2019 Monthly Payment Incurred | | $13,219.41 | $0.00 | $0.00 | -$518.62 | $0.00 | $461,776.09 | | $5,781.93 | $0.00 | $0.00 |
| 11/20/2019 | | | | PROPERTY INSPECTION | | $13,219.41 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | $5,263.31 | $0.00 | $0.00 |
| 12/1/2019 | $6,627.71 | | $6,627.71 | 11/01/2019 Monthly Payment Incurred | | $19,847.12 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | $5,263.31 | $0.00 | $0.00 |
| 12/5/2019 | | | | PROPERTY INSPECTION | | $19,847.12 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | $5,263.31 | -$15.00 | $0.00 |
| 12/18/2019 | | | | Hazard Insurance | | $19,847.12 | $0.00 | -$518.62 | $0.00 | $0.00 | $461,776.09 | | $4,744.69 | -$15.00 | $0.00 |
| 1/1/2020 | $6,627.71 | | $6,627.71 | 01/01/2020 Monthly Payment Incurred | | $26,474.83 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | $4,744.69 | -$15.00 | $0.00 |
| 1/5/2020 | | | | PROPERTY INSPECTION | | $26,474.83 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | $4,744.69 | -$30.00 | $0.00 |
| 1/20/2020 | | | | Hazard Insurance | | $26,474.83 | $0.00 | -$518.62 | $0.00 | $0.00 | $461,776.09 | | $4,226.07 | -$30.00 | $0.00 |
| 1/24/2020 | | | | FCL ATTORNEY FEES | | $26,474.83 | $0.00 | $0.00 | -$500.00 | $0.00 | $461,776.09 | | $4,226.07 | -$530.00 | $0.00 |
| 1/31/2020 | | | | FCL TITLE SERVICES | | $26,474.83 | $0.00 | $0.00 | -$325.00 | $0.00 | $461,776.09 | | $4,226.07 | -$405.00 | $0.00 |
| 2/1/2020 | $6,627.71 | | $6,627.71 | 02/01/2020 Monthly Payment Incurred | | $33,102.54 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | $4,226.07 | -$405.00 | $0.00 |
| 2/3/2020 | | | | City Taxes | | $33,102.54 | $0.00 | $0.00 | -$7,031.56 | $0.00 | $461,776.09 | | -$2,805.49 | -$405.00 | $0.00 |
| 2/3/2020 | | | | PROPERTY INSPECTION | | $33,102.54 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$2,805.49 | -$420.00 | $0.00 |
| 2/7/2020 | | | | FCL CERTIFIED MAIL FEES | | $33,102.54 | $0.00 | $0.00 | -$0.50 | $0.00 | $461,776.09 | | -$2,805.49 | -$420.50 | $0.00 |
| 2/20/2020 | | | | Hazard Insurance | | $33,102.54 | $0.00 | -$518.62 | $0.00 | $0.00 | $461,776.09 | | -$3,324.11 | -$420.50 | $0.00 |
| 3/1/2020 | $6,627.71 | | $6,627.71 | 03/01/2020 Monthly Payment Incurred | | $39,730.25 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$3,324.11 | -$420.50 | $0.00 |
| 3/3/2020 | | | | FILING FEES | | $39,730.25 | $0.00 | $0.00 | -$349.23 | $0.00 | $461,776.09 | | -$3,324.11 | -$769.73 | $0.00 |
| 3/3/2020 | | | | PROPERTY INSPECTION | | $39,730.25 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$3,324.11 | -$784.73 | $0.00 |
| 3/3/2020 | | | | FCL ATTORNEY FEES | | $39,730.25 | $0.00 | $0.00 | -$800.00 | $0.00 | $461,776.09 | | -$3,324.11 | -$1,584.73 | $0.00 |
| 3/9/2020 | | | | FCL ATTORNEY FEES | | $39,730.25 | $0.00 | $0.00 | -$480.00 | $0.00 | $461,776.09 | | -$3,324.11 | -$2,064.73 | $0.00 |
| 3/10/2020 | | | | FCL PROCEEDINGS COSTS | | $39,730.25 | $0.00 | $0.00 | -$95.00 | $0.00 | $461,776.09 | | -$3,324.11 | -$2,159.73 | $0.00 |
| 3/18/2020 | | | | Hazard Insurance | | $39,730.25 | $0.00 | -$518.62 | $0.00 | $0.00 | $461,776.09 | | -$3,842.73 | -$2,159.73 | $0.00 |
| 4/1/2020 | $6,627.71 | | $6,627.71 | 04/01/2020 Monthly Payment Incurred | | $46,357.96 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$3,842.73 | -$2,174.73 | $0.00 |
| 4/1/2020 | | | | PROPERTY INSPECTION | | $46,357.96 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$3,842.73 | -$2,174.73 | $0.00 |
| 4/20/2020 | | | | Hazard Insurance | | $46,357.96 | $0.00 | -$518.62 | $0.00 | $0.00 | $461,776.09 | | -$4,361.35 | -$2,174.73 | $0.00 |
| 5/1/2020 | $6,627.71 | | $6,627.71 | 05/01/2020 Monthly Payment Incurred | | $52,985.67 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$4,361.35 | -$2,174.73 | $0.00 |
| 5/4/2020 | | | | PROPERTY INSPECTION | | $52,985.67 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$4,361.35 | -$2,189.73 | $0.00 |
| 5/20/2020 | | | | Hazard Insurance | | $52,985.67 | $0.00 | -$518.62 | $0.00 | $0.00 | $461,776.09 | | -$4,879.97 | -$2,189.73 | $0.00 |
| 6/1/2020 | $6,627.71 | | $6,627.71 | 06/01/2020 Monthly Payment Incurred | | $59,613.38 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$4,879.97 | -$2,189.73 | $0.00 |
| 6/18/2020 | | | | Hazard Insurance | | $59,613.38 | $0.00 | -$518.62 | $0.00 | $0.00 | $461,776.09 | | -$5,398.59 | -$2,189.73 | $0.00 |
| 6/20/2020 | | | | PROPERTY INSPECTION | | $59,613.38 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$5,398.59 | -$2,204.73 | $0.00 |
| 7/1/2020 | $6,627.71 | | $6,627.71 | 07/01/2020 Monthly Payment Incurred | | $66,241.09 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$5,398.59 | -$2,204.73 | $0.00 |
| 7/20/2020 | | | | Hazard Insurance | | $66,241.09 | $0.00 | -$518.62 | $0.00 | $0.00 | $461,776.09 | | -$5,917.21 | -$2,204.73 | $0.00 |
| 7/22/2020 | | | | PROPERTY INSPECTION | | $66,241.09 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$5,917.21 | -$2,219.73 | $0.00 |
| 8/1/2020 | $6,627.71 | | $6,627.71 | 08/01/2020 Monthly Payment Incurred | | $72,868.80 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$5,917.21 | -$2,219.73 | $0.00 |
| 8/17/2020 | | | | PROPERTY INSPECTION | | $72,868.80 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$5,917.21 | -$2,234.73 | $0.00 |
| 8/19/2020 | | | | Hazard Insurance | | $72,868.80 | $0.00 | -$757.60 | $0.00 | $0.00 | $461,776.09 | | -$6,674.81 | -$2,234.73 | $0.00 |
| 9/1/2020 | $6,627.71 | | $6,627.71 | 09/01/2020 Monthly Payment Incurred | | $79,496.51 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$6,674.81 | -$2,234.73 | $0.00 |
| 9/17/2020 | | | | Hazard Insurance | | $79,496.51 | $0.00 | -$757.60 | $0.00 | $0.00 | $461,776.09 | | -$7,432.41 | -$2,234.73 | $0.00 |
| 9/18/2020 | | | | PROPERTY INSPECTION | | $79,496.51 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$7,432.41 | -$2,249.73 | $0.00 |
| 10/1/2020 | $6,627.71 | | $6,627.71 | 10/01/2020 Monthly Payment Incurred | | $86,124.22 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$7,432.41 | -$2,249.73 | $0.00 |
| 10/16/2020 | | | | Hazard Insurance | | $86,124.22 | $0.00 | -$757.60 | $0.00 | $0.00 | $461,776.09 | | -$8,190.01 | -$2,249.73 | $0.00 |
| 10/20/2020 | | | | PROPERTY INSPECTION | | $86,124.22 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$8,190.01 | -$2,264.73 | $0.00 |
| 11/1/2020 | $6,627.71 | | $6,627.71 | 11/01/2020 Monthly Payment Incurred | | $92,751.93 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$8,190.01 | -$2,264.73 | $0.00 |
| 11/17/2020 | | | | Hazard Insurance | | $92,751.93 | $0.00 | -$757.60 | $0.00 | $0.00 | $461,776.09 | | -$8,947.61 | -$2,279.73 | $0.00 |
| 11/18/2020 | | | | PROPERTY INSPECTION | | $92,751.93 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$8,947.61 | -$2,279.73 | $0.00 |
| 12/1/2020 | $6,781.87 | | $6,781.87 | 12/01/2020 Monthly Payment Incurred | | $99,533.80 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$8,947.61 | -$2,279.73 | $0.00 |
| 12/18/2020 | | | | Hazard Insurance | | $99,533.80 | $0.00 | -$757.60 | $0.00 | $0.00 | $461,776.09 | | -$9,705.21 | -$2,294.73 | $0.00 |
| 12/18/2020 | | | | PROPERTY INSPECTION | | $99,533.80 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$9,705.21 | -$2,294.73 | $0.00 |
| 1/1/2021 | $6,781.87 | | $6,781.87 | 01/01/2021 Monthly Payment Incurred | | $106,315.67 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$9,705.21 | -$2,294.73 | $0.00 |
| 1/15/2021 | | | | PROPERTY INSPECTION | | $106,315.67 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$9,705.21 | -$2,309.73 | $0.00 |
| 1/21/2021 | | | | Hazard Insurance | | $106,315.67 | $0.00 | -$757.60 | $0.00 | $0.00 | $461,776.09 | | -$10,462.81 | -$2,309.73 | $0.00 |
| 2/1/2021 | $6,781.87 | | $6,781.87 | 02/01/2021 Monthly Payment Incurred | | $113,097.54 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$10,462.81 | -$2,309.73 | $0.00 |
| 2/14/2021 | | | | PROPERTY INSPECTION | | $113,097.54 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$10,462.81 | -$2,324.73 | $0.00 |
| 2/18/2021 | | | | Hazard Insurance | | $113,097.54 | $0.00 | -$757.60 | $0.00 | $0.00 | $461,776.09 | | -$11,220.41 | -$2,324.73 | $0.00 |
| 3/1/2021 | $6,781.87 | | $6,781.87 | 03/01/2021 Monthly Payment Incurred | | $119,879.41 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$11,220.41 | -$2,324.73 | $0.00 |
| 3/5/2021 | | | | City Taxes | | $119,879.41 | $0.00 | -$7,102.59 | $0.00 | $0.00 | $461,776.09 | | -$18,323.00 | -$2,324.73 | $0.00 |
| 3/18/2021 | | | | Hazard Insurance | | $119,879.41 | $0.00 | -$757.60 | $0.00 | $0.00 | $461,776.09 | | -$19,080.60 | -$2,324.73 | $0.00 |
| 4/1/2021 | $6,781.87 | | $6,781.87 | 04/01/2021 Monthly Payment Incurred | | $126,661.28 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$19,080.60 | -$2,339.73 | $0.00 |
| 4/16/2021 | | | | PROPERTY INSPECTION | | $126,661.28 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$19,080.60 | -$2,354.73 | $0.00 |
| 4/20/2021 | | | | Hazard Insurance | | $126,661.28 | $0.00 | -$757.60 | $0.00 | $0.00 | $461,776.09 | | -$19,838.20 | -$2,354.73 | $0.00 |
| 5/1/2021 | $6,781.87 | | $6,781.87 | 05/01/2021 Monthly Payment Incurred | | $133,443.15 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$19,838.20 | -$2,369.73 | $0.00 |
| 5/17/2021 | | | | PROPERTY INSPECTION | | $133,443.15 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$19,838.20 | -$2,369.73 | $0.00 |
| 5/19/2021 | | | | Hazard Insurance | | $133,443.15 | $0.00 | -$757.60 | $0.00 | $0.00 | $461,776.09 | | -$20,595.80 | -$2,369.73 | $0.00 |
| 6/1/2021 | $6,781.87 | | $6,781.87 | 06/01/2021 Monthly Payment Incurred | | $140,225.02 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$20,595.80 | -$2,369.73 | $0.00 |
| 6/16/2021 | | | | PROPERTY INSPECTION | | $140,225.02 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$20,595.80 | -$2,384.73 | $0.00 |
| 6/18/2021 | | | | Hazard Insurance | | $140,225.02 | $0.00 | -$757.60 | $0.00 | $0.00 | $461,776.09 | | -$21,353.40 | -$2,384.73 | $0.00 |
| 7/1/2021 | $6,776.53 | | $6,776.53 | 07/01/2021 Monthly Payment Incurred | | $147,001.55 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$21,353.40 | -$2,384.73 | $0.00 |
| 7/20/2021 | | | | Hazard Insurance | | $147,001.55 | $0.00 | -$757.60 | $0.00 | $0.00 | $461,776.09 | | -$22,111.00 | -$2,384.73 | $0.00 |
| 8/1/2021 | $6,776.53 | | $6,776.53 | 08/01/2021 Monthly Payment Incurred | | $153,778.08 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$22,111.00 | -$2,384.73 | $0.00 |
| 8/1/2021 | | | | PROPERTY INSPECTION | | $153,778.08 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$22,111.00 | -$2,399.73 | $0.00 |
| 8/18/2021 | | | | Hazard Insurance | | $153,778.08 | $0.00 | -$799.69 | $0.00 | $0.00 | $461,776.09 | | -$22,910.69 | -$2,399.73 | $0.00 |
| 9/1/2021 | $6,776.53 | | $6,776.53 | 09/01/2021 Monthly Payment Incurred | | $160,554.61 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$22,910.69 | -$3,099.73 | $0.00 |
| 9/3/2021 | | | | PROPERTY INSPECTION | | $160,554.61 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$22,910.69 | -$3,114.73 | $0.00 |
| 9/20/2021 | | | | Hazard Insurance | | $160,554.61 | $0.00 | -$799.69 | $0.00 | $0.00 | $461,776.09 | | -$23,710.38 | -$3,114.73 | $0.00 |
| 10/1/2021 | $6,776.53 | | $6,776.53 | 10/01/2021 Monthly Payment Incurred | | $167,331.14 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$23,710.38 | -$3,114.73 | $0.00 |
| 10/14/2021 | | | | FCL CERTIFIED MAIL FEES | | $167,331.14 | $0.00 | $0.00 | -$1.06 | $0.00 | $461,776.09 | | -$23,710.38 | -$3,130.79 | $0.00 |
| 10/19/2021 | | | | Hazard Insurance | | $167,331.14 | $0.00 | -$799.69 | $0.00 | $0.00 | $461,776.09 | | -$24,510.07 | -$3,130.79 | $0.00 |
| 11/1/2021 | $6,776.53 | | $6,776.53 | 11/01/2021 Monthly Payment Incurred | | $174,107.67 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$24,510.07 | -$3,130.79 | $0.00 |
| 11/5/2021 | | | | PROPERTY INSPECTION | | $174,107.67 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$24,510.07 | -$3,145.79 | $0.00 |
| 11/18/2021 | | | | Hazard Insurance | | $174,107.67 | $0.00 | -$799.69 | $0.00 | $0.00 | $461,776.09 | | -$25,309.76 | -$3,145.79 | $0.00 |
| 11/18/2021 | | | | FCL MEDIATION 2ND SESSION | | $174,107.67 | $0.00 | $0.00 | -$375.00 | $0.00 | $461,776.09 | | -$25,309.76 | -$3,520.79 | $0.00 |
| 12/1/2021 | $6,818.62 | | $6,818.62 | 12/01/2021 Monthly Payment Incurred | | $180,926.29 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$25,309.76 | -$3,535.79 | $0.00 |
| 12/2/2021 | | | | PROPERTY INSPECTION | | $180,926.29 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$25,309.76 | -$3,535.79 | $0.00 |
| 12/20/2021 | | | | Hazard Insurance | | $180,926.29 | $0.00 | -$799.69 | $0.00 | $0.00 | $461,776.09 | | -$26,109.45 | -$3,535.79 | $0.00 |
| 1/1/2022 | $6,818.62 | | $6,818.62 | 01/01/2022 Monthly Payment Incurred | | $187,744.91 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$26,109.45 | -$3,535.79 | $0.00 |
| 1/5/2022 | | | | PROPERTY INSPECTION | | $187,744.91 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$26,109.45 | -$3,550.79 | $0.00 |
| 1/20/2022 | | | | Hazard Insurance | | $187,744.91 | $0.00 | -$799.69 | $0.00 | $0.00 | $461,776.09 | | -$26,909.14 | -$3,550.79 | $0.00 |
| 2/1/2022 | $6,818.62 | | $6,818.62 | 02/01/2022 Monthly Payment Incurred | | $194,563.53 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$26,909.14 | -$3,550.79 | $0.00 |
| 2/2/2022 | | | | PROPERTY INSPECTION | | $194,563.53 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$26,909.14 | -$3,565.79 | $0.00 |
| 2/18/2022 | | | | Hazard Insurance | | $194,563.53 | $0.00 | -$799.69 | $0.00 | $0.00 | $461,776.09 | | -$27,708.83 | -$3,565.79 | $0.00 |
| 2/24/2022 | | | | City Taxes | | $194,563.53 | $0.00 | -$7,102.59 | $0.00 | $0.00 | $461,776.09 | | -$34,811.42 | -$3,565.79 | $0.00 |
| 3/1/2022 | $6,818.62 | | $6,818.62 | 03/01/2022 Monthly Payment Incurred | | $201,382.15 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$34,811.42 | -$3,565.79 | $0.00 |
| 3/18/2022 | | | | Hazard Insurance | | $201,382.15 | $0.00 | -$799.69 | $0.00 | $0.00 | $461,776.09 | | -$35,611.11 | -$3,565.79 | $0.00 |
| 4/1/2022 | $6,818.62 | | $6,818.62 | 04/01/2022 Monthly Payment Incurred | | $208,200.77 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$35,611.11 | -$3,565.79 | $0.00 |
| 4/20/2022 | | | | Hazard Insurance | | $208,200.77 | $0.00 | -$799.69 | $0.00 | $0.00 | $461,776.09 | | -$36,410.80 | -$3,565.79 | $0.00 |
| 5/1/2022 | $6,818.62 | | $6,818.62 | 05/01/2022 Monthly Payment Incurred | | $215,019.39 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$36,410.80 | -$3,565.79 | $0.00 |
| 5/12/2022 | | | | FC MEDIATION 3RD AND SUB SESSI | | $215,019.39 | $0.00 | $0.00 | -$375.00 | $0.00 | $461,776.09 | | -$37,210.49 | -$3,940.79 | $0.00 |
| 5/18/2022 | | | | Hazard Insurance | | $215,019.39 | $0.00 | -$799.69 | $0.00 | $0.00 | $461,776.09 | | -$37,210.49 | -$3,940.79 | $0.00 |
| 5/25/2022 | | | | PROPERTY INSPECTION | | $215,019.39 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$37,210.49 | -$3,960.79 | $0.00 |
| 6/1/2022 | $6,818.62 | | $6,818.62 | 06/01/2022 Monthly Payment Incurred | | $221,838.01 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$37,210.49 | -$3,960.79 | $0.00 |
| 6/20/2022 | | | | PROPERTY INSPECTION | | $221,838.01 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$38,010.18 | -$3,975.79 | $0.00 |
| 6/27/2022 | | | | Hazard Insurance | | $221,838.01 | $0.00 | -$799.69 | $0.00 | $0.00 | $461,776.09 | | -$38,010.18 | -$3,980.79 | $0.00 |
| 7/1/2022 | $6,818.62 | | $6,818.62 | 07/01/2022 Monthly Payment Incurred | | $228,656.63 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$38,010.18 | -$3,980.79 | $0.00 |
| 7/14/2022 | | | | FC MEDIATION 3RD AND SUB SESSI | | $228,656.63 | $0.00 | $0.00 | -$375.00 | $0.00 | $461,776.09 | | -$38,809.87 | -$4,355.79 | $0.00 |
| 7/24/2022 | | | | Hazard Insurance | | $228,656.63 | $0.00 | -$799.69 | $0.00 | $0.00 | $461,776.09 | | -$38,809.87 | -$4,375.79 | $0.00 |
| 8/1/2022 | $6,818.62 | | $6,818.62 | 08/01/2022 Monthly Payment Incurred | | $235,475.25 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$38,809.87 | -$4,375.79 | $0.00 |
| 8/18/2022 | | | | PROPERTY INSPECTION | | $235,475.25 | $0.00 | $0.00 | -$15.00 | $0.00 | $461,776.09 | | -$39,609.56 | -$4,375.79 | $0.00 |
| 9/1/2022 | $6,818.62 | | $6,818.62 | 09/01/2022 Monthly Payment Incurred | | $242,293.87 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$39,609.56 | -$4,390.79 | $0.00 |
| 9/19/2022 | | | | PROPERTY INSPECTION | | $242,293.87 | $0.00 | $0.00 | -$20.00 | $0.00 | $461,776.09 | | -$39,609.56 | -$4,415.79 | $0.00 |
| 9/20/2022 | | | | Hazard Insurance | | $242,293.87 | $0.00 | -$799.69 | $0.00 | $0.00 | $461,776.09 | | -$40,409.25 | -$4,415.79 | $0.00 |
| 9/22/2022 | | | | FCL CERTIFIED MAIL FEES | | $242,293.87 | $0.00 | $0.00 | -$0.57 | $0.00 | $461,776.09 | | -$40,409.25 | -$4,416.36 | $0.00 |
| 10/1/2022 | $6,818.62 | | $6,818.62 | 10/01/2022 Monthly Payment Incurred | | $249,112.49 | $0.00 | $0.00 | $0.00 | $0.00 | $461,776.09 | | -$40,409.25 | -$4,416.36 | $0.00 |
| 10/3/2022 | | | | FCL ATTORNEY FEES | | $249,112.49 | $0.00 | $0.00 | -$340.00 | $0.00 | $461,776.09 | | -$40,409.25 | -$4,756.36 | $0.00 |

Bankruptcy Proof Of Claim - Form B 410A

| Date | Amount | Description | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/12/2022 | | FCL SHERIFF'S FEES AND COSTS | $249,112.49 | $0.00 | $0.00 | $0.00 | -$1,500.00 | $0.00 | $841,776.09 | -$40,409.25 | -$6,256.36 | $0.00 |
| 10/12/2022 | | FCL CERTIFIED MAIL FEES | $249,112.49 | $0.00 | $0.00 | $0.00 | -$6.57 | $0.00 | $841,776.09 | -$40,409.25 | -$6,262.93 | $0.00 |
| 10/12/2022 | | FCL CERTIFIED MAIL FEES | $249,112.49 | $0.00 | $0.00 | $0.00 | -$0.57 | $0.00 | $841,776.09 | -$40,409.25 | -$6,263.50 | $0.00 |
| 10/12/2022 | | FCL CERTIFIED MAIL FEES | $249,112.49 | $0.00 | $0.00 | $0.00 | -$1.07 | $0.00 | $841,776.09 | -$40,409.25 | -$6,264.57 | $0.00 |
| 10/12/2022 | | FCL CERTIFIED MAIL FEES | $249,112.49 | $0.00 | $0.00 | $0.00 | -$6.57 | $0.00 | $841,776.09 | -$40,409.25 | -$6,271.14 | $0.00 |
| 10/12/2022 | | FCL CERTIFIED MAIL FEES | $249,112.49 | $0.00 | $0.00 | $0.00 | -$1.07 | $0.00 | $841,776.09 | -$40,409.25 | -$6,272.21 | $0.00 |
| 10/16/2022 | | PROPERTY VALUATION | $249,112.49 | $0.00 | $0.00 | $0.00 | -$95.00 | $0.00 | $841,776.09 | -$40,409.25 | -$6,367.21 | $0.00 |
| 10/18/2022 | | FCL PROCEEDINGS COSTS | $249,112.49 | $0.00 | $0.00 | $0.00 | -$95.00 | $0.00 | $841,776.09 | -$40,409.25 | -$6,462.21 | $0.00 |
| 10/19/2022 | | Hazard Insurance | $249,112.49 | $0.00 | $0.00 | -$799.69 | $0.00 | $0.00 | $841,776.09 | -$41,208.94 | -$6,462.21 | $0.00 |
| 10/25/2022 | | PROPERTY INSPECTION | $249,112.49 | $0.00 | $0.00 | $0.00 | -$20.00 | $0.00 | $841,776.09 | -$41,208.94 | -$6,482.21 | $0.00 |
| 11/1/2022 | $6,818.62 | $6,818.62 11/01/2022 Monthly Payment Incurred | $255,931.11 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $841,776.09 | -$41,208.94 | -$6,482.21 | $0.00 |
| 11/8/2022 | | FCL TITLE FEES | $255,931.11 | $0.00 | $0.00 | $0.00 | -$325.00 | $0.00 | $841,776.09 | -$41,208.94 | -$6,807.21 | $0.00 |
| 11/9/2022 | | FCL CERTIFIED MAIL FEES | $255,931.11 | $0.00 | $0.00 | $0.00 | -$1.31 | $0.00 | $841,776.09 | -$41,208.94 | -$6,808.52 | $0.00 |
| 11/9/2022 | | FCL CERTIFIED MAIL FEES | $255,931.11 | $0.00 | $0.00 | $0.00 | -$1.31 | $0.00 | $841,776.09 | -$41,208.94 | -$6,809.83 | $0.00 |
| 11/9/2022 | | FCL CERTIFIED MAIL FEES | $255,931.11 | $0.00 | $0.00 | $0.00 | -$1.31 | $0.00 | $841,776.09 | -$41,208.94 | -$6,811.14 | $0.00 |
| 11/9/2022 | | FCL CERTIFIED MAIL FEES | $255,931.11 | $0.00 | $0.00 | $0.00 | -$1.31 | $0.00 | $841,776.09 | -$41,208.94 | -$6,812.45 | $0.00 |
| 11/9/2022 | | FCL CERTIFIED MAIL FEES | $255,931.11 | $0.00 | $0.00 | $0.00 | -$1.31 | $0.00 | $841,776.09 | -$41,208.94 | -$6,813.76 | $0.00 |
| 11/9/2022 | | FCL CERTIFIED MAIL FEES | $255,931.11 | $0.00 | $0.00 | $0.00 | -$1.31 | $0.00 | $841,776.09 | -$41,208.94 | -$6,815.07 | $0.00 |
| 11/9/2022 | | FCL CERTIFIED MAIL FEES | $255,931.11 | $0.00 | $0.00 | $0.00 | -$1.31 | $0.00 | $841,776.09 | -$41,208.94 | -$6,816.38 | $0.00 |
| 11/9/2022 | | FCL CERTIFIED MAIL FEES | $255,931.11 | $0.00 | $0.00 | $0.00 | -$1.31 | $0.00 | $841,776.09 | -$41,208.94 | -$6,817.69 | $0.00 |
| 11/9/2022 | | FCL CERTIFIED MAIL FEES | $255,931.11 | $0.00 | $0.00 | $0.00 | -$1.31 | $0.00 | $841,776.09 | -$41,208.94 | -$6,819.00 | $0.00 |
| 11/9/2022 | | FCL CERTIFIED MAIL FEES | $255,931.11 | $0.00 | $0.00 | $0.00 | -$1.31 | $0.00 | $841,776.09 | -$41,208.94 | -$6,820.31 | $0.00 |
| 11/18/2022 | | Hazard Insurance | $255,931.11 | $0.00 | $0.00 | -$799.69 | $0.00 | $0.00 | $841,776.09 | -$42,008.63 | -$6,820.31 | $0.00 |
| 11/21/2022 | | PROPERTY INSPECTION | $255,931.11 | $0.00 | $0.00 | $0.00 | -$20.00 | $0.00 | $841,776.09 | -$42,008.63 | -$6,840.31 | $0.00 |
| 12/1/2022 | $6,818.62 | $6,818.62 12/01/2022 Monthly Payment Incurred | $262,749.73 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $841,776.09 | -$42,008.63 | -$6,840.31 | $0.00 |
| 12/20/2022 | | Hazard Insurance | $262,749.73 | $0.00 | $0.00 | -$799.69 | $0.00 | $0.00 | $841,776.09 | -$42,808.32 | -$6,840.31 | $0.00 |
| 12/21/2022 | | PROPERTY INSPECTION | $262,749.73 | $0.00 | $0.00 | $0.00 | -$20.00 | $0.00 | $841,776.09 | -$42,808.32 | -$6,860.31 | $0.00 |
| 1/1/2023 | $6,642.25 | $6,642.25 01/01/2023 Monthly Payment Incurred | $269,391.98 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $841,776.09 | -$42,808.32 | -$6,860.31 | $0.00 |

**CARRINGTON**
MORTGAGE SERVICES, LLC
NMLS ID #2600

CARRINGTON MORTGAGE SERVICES, LLC
P.O. Box 5001
Westfield, IN 46074

(800) 561-4567  FAX: (949) 517-5220

THOMAS C STAFFORD
6491 WOODBINE AVE
PHILADELPHIA        PA 19151

YOUR LOAN NUMBER : ██████████

DATE: 01/11/23

**\*\*\* ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT - LAST CYCLES ESCROW ACCOUNT HISTORY  \*\*\***

THIS HISTORY STATEMENT COMPARES YOUR PRIOR ANALYSIS CYCLE PROJECTED ESCROW ACTIVITY TO THE
ACTUAL ESCROW ACTIVITY BEGINNING DECEMBER,2022 AND ENDING NOVEMBER, 2023.  IF YOUR LOAN
WAS PAID-OFF, ASSUMED, OR TRANSFERRED DURING THIS PRIOR CYCLE, OR THE COMPUTATION YEAR IS
BEING CHANGED, ACTUAL ACTIVITY STOPS AT THAT POINT.  THIS STATEMENT IS INFORMATIONAL ONLY
AND REQUIRES NO ACTION ON YOUR PART.

**--- YOUR PAYMENT BREAKDOWN AS OF DECEMBER,2022 IS ---**

| | |
|---|---|
| PRIN & INTEREST | 5,427.05 |
| ESCROW PAYMENT | 1,391.57 |
| TOTAL | 6,818.62 |

| | -- PAYMENTS TO ESCROW -- | | -- PAYMENTS FROM ESCROW -- | | | | -- ESCROW BALANCE -- | | |
|---|---|---|---|---|---|---|---|---|---|
| MONTH | PRIOR | PROJECTED ACTUAL | PRIOR | PROJECTED | DESCRIPTION | ACTUAL | DESCRIPTION | PRIOR | PROJECTED | ACTUAL |
| | | | | | STARTING BALANCE  = = = > | | | 7518.21 | 42008.63- |
| DEC | 1391.57 * | | 799.69 | HOMEOWNERS | | 799.69 | HOMEOWNERS | 8110.09 | 42808.32- ALP |
| JAN | 1391.57 | E | 799.69 | HOMEOWNERS | | | | 8701.97 | 42808.32- |
| FEB | 1391.57 | E | 799.69 | HOMEOWNERS | | | | 9293.85 | 42808.32- |
| MAR | 1391.57 | E | 799.69 | HOMEOWNERS | | | | 2783.14 TLP | 42808.32- |
| | | O | 7102.59 | CITY TAX | | | | | |
| APR | 1391.57 | E | 799.69 | HOMEOWNERS | | | | 3375.02 | 42808.32- |
| MAY | 1391.57 | E | 799.69 | HOMEOWNERS | | | | 3966.90 | 42808.32- |
| JUN | 1391.57 | E | 799.69 | HOMEOWNERS | | | | 4558.78 | 42808.32- |
| JUL | 1391.57 | E | 799.69 | HOMEOWNERS | | | | 5150.66 | 42808.32- |
| AUG | 1391.57 | E | 799.69 | HOMEOWNERS | | | | 5742.54 | 42808.32- |
| SEP | 1391.57 | E | 799.69 | HOMEOWNERS | | | | 6334.42 | 42808.32- |
| OCT | 1391.57 | E | 799.69 | HOMEOWNERS | | | | 6926.30 | 42808.32- |
| NOV | 1391.57 | E | 799.69 | HOMEOWNERS | | | | 7518.18 | 42808.32- |
| TOT | 16698.87 | 0.00 | 16698.87 | | | 799.69 | | | |

UNDER FEDERAL LAW, WHEN YOUR ACTUAL ESCROW BALANCE REACHES ITS LOWEST POINT, THAT BALANCE IS TARGETED
NOT TO EXCEED 1/6TH OF THE ANNUAL PROJECTED DISBURSEMENTS.  YOUR LOAN DOCUMENTS OR STATE LAW MAY
SPECIFY THAT YOUR LOWEST BALANCE MUST BE A LOWER AMOUNT THAN THE FEDERAL LAW ALLOWS.

UNDER YOUR MORTGAGE CONTRACT OR STATE OR FEDERAL LAW, YOUR TARGETED LOW POINT ESCROW BALANCE
(TLP) WAS $2,783.14.  YOUR ACTUAL LOW POINT ESCROW BALANCE (ALP) WAS  $42,808.32-.

BY COMPARING THE PROJECTED ESCROW TRANSACTIONS WITH THE ACTUAL TRANSACTIONS YOU CAN
DETERMINE WHERE A DIFFERENCE MAY HAVE OCCURRED.  AN ASTERISK  (*) INDICATES A DIFFERENCE IN EITHER THE
AMOUNT OR DATE OF THE PROJECTED ACTIVITY AND THE ACTUAL ACTIVITY.
THE LETTER "E" BESIDE AN AMOUNT INDICATES THAT THE PROJECTED ACTIVITY HAS NOT YET OCCURRED DUE TO THE
DATE OF THIS STATEMENT.

IF THERE ARE NO PRIOR PAYMENTS TO OR FROM ESCROW SHOWN, THERE WAS NO PRIOR PROJECTION
TO WHICH THE ACTUAL ACTIVITY COULD BE COMPARED.

Your projected escrow balance consists of the following detail (an * next to an amount
indicates this is a total that represents more than one payment to or disbursement from escrow):

**Escrow payments up to escrow analysis effective date:**

10/19     $1,161.05      11/19     $1,204.26      12/19     $47,337.90  *

**\* \* \*  ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT - PROJECTIONS  \* \* \***

PLEASE REVIEW THIS STATEMENT CLOSELY - YOUR MORTGAGE PAYMENT MAY BE AFFECTED.
THIS STATEMENT TELLS YOU OF ANY CHANGES IN YOUR MORTGAGE PAYMENT, ANY SURPLUS REFUNDS, OR
ANY SHORTAGE OR DEFICIENCY THAT YOU MUST PAY. IT ALSO SHOWS YOU THE PROJECTED ESCROW
ACTIVITY FOR YOUR ESCROW CYCLE BEGINNING FEBRUARY,2023 AND ENDING JANUARY,2024.

**-------------------- PROJECTED PAYMENTS FROM ESCROW - FEBRUARY,2023 THROUGH JANUARY,2024  --------------**

| | |
|---|---|
| HOMEOWNERS INSU | 9,596.28 |
| CITY TAX | 7,102.59 |
| | |
| TOTAL | 16,698.87 |
| PERIODIC PAYMENT TO ESCROW | 1,391.57     (1/12 OF "TOTAL FROM ESCROW") |

**------------------- PROJECTED ESCROW ACTIVITY -  FEBRUARY,2023 THROUGH JANUARY,2024 ----------------------**

| | ---- PROJECTED PAYMENTS -- | | | -- ESCROW BALANCE COMPARISON -- | |
|---|---|---|---|---|---|
| MONTH | TO ESCROW | FROM ESCROW | DESCRIPTION | PROJECTED | REQUIRED |
| | | ACTUAL STARTING BALANCE  = = = > | | 8,701.97 | 8,701.97 |
| FEB,23 | 1,391.57 | 799.69 | HOMEOWNERS INSU | 9,293.85 | 9,293.85 |
| MAR,23 | 1,391.57 | 799.69 | HOMEOWNERS INSU | 2,783.14 ALP | 2,783.14 RLP |
| | | 7,102.59 | CITY TAX | | |
| APR,23 | 1,391.57 | 799.69 | HOMEOWNERS INSU | 3,375.02 | 3,375.02 |
| MAY,23 | 1,391.57 | 799.69 | HOMEOWNERS INSU | 3,966.90 | 3,966.90 |
| JUN,23 | 1,391.57 | 799.69 | HOMEOWNERS INSU | 4,558.78 | 4,558.78 |
| JUL,23 | 1,391.57 | 799.69 | HOMEOWNERS INSU | 5,150.66 | 5,150.66 |
| AUG,23 | 1,391.57 | 799.69 | HOMEOWNERS INSU | 5,742.54 | 5,742.54 |
| SEP,23 | 1,391.57 | 799.69 | HOMEOWNERS INSU | 6,334.42 | 6,334.42 |
| OCT,23 | 1,391.57 | 799.69 | HOMEOWNERS INSU | 6,926.30 | 6,926.30 |
| NOV,23 | 1,391.57 | 799.69 | HOMEOWNERS INSU | 7,518.18 | 7,518.18 |
| DEC,23 | 1,391.57 | 799.69 | HOMEOWNERS INSU | 8,110.06 | 8,110.06 |
| JAN,24 | 1,391.57 | 799.69 | HOMEOWNERS INSU | 8,701.94 | 8,701.94 |

**\*\*\*\* CONTINUED ON NEXT PAGE \*\*\*\***

**** CONTINUATION ****

-------------------------------- DETERMINING THE SUFFICIENCY OF YOUR ESCROW BALANCE -----------------------------------

IF THE PROJECTED LOW POINT BALANCE (ALP) IS
GREATER THAN THE REQUIRED LOW POINT BALANCE (RLP) ,
THEN THERE IS AN ESCROW SURPLUS....                                    THE ESCROW SURPLUS IS....              0.00 *

AT THE TIME OF YOUR BANKRUPTCY FILING, YOUR ESCROW SHORTAGE INCLUDED IN THE POC (PROOF OF CLAIM) IS $0.00.


------------------------------------- CALCULATIONS OF YOUR NEW PAYMENT AMOUNT -----------------------------------------
                          PRIN & INTEREST              5,427.05 *
                          ESCROW PAYMENT               1,391.57
BORROWER PAYMENT STARTING WITH THE PAYMENT DUE  02/01/23   ==>        6,818.62

* IF YOUR LOAN IS AN ADJUSTABLE RATE MORTGAGE, THE PRINCIPAL & INTEREST PORTION OF
  YOUR PAYMENT MAY CHANGE WITHIN THIS CYCLE IN ACCORDANCE WITH YOUR LOAN DOCUMENTS.

NOTE :      YOUR ESCROW BALANCE MAY CONTAIN A CUSHION. A CUSHION IS AN AMOUNT OF MONEY
            HELD IN YOUR ESCROW ACCOUNT TO PREVENT YOUR ESCROW BALANCE FROM BEING OVERDRAWN
            WHEN INCREASES IN THE DISBURSEMENTS OCCUR. FEDERAL LAW AUTHORIZES A MAXIMUM
            ESCROW CUSHION NOT TO EXCEED 1/6TH OF THE TOTAL ANNUAL PROJECTED ESCROW
            DISBURSEMENTS MADE DURING THE ABOVE CYCLE. THIS AMOUNT IS $2,783.14.
            YOUR LOAN DOCUMENTS OR STATE LAW MAY REQUIRE A LESSER CUSHION. YOUR MORTGAGE
            CONTRACT AND STATE LAW ARE SILENT ON THIS ISSUE. WHEN YOUR ESCROW BALANCE
            REACHES ITS LOWEST POINT DURING THE ABOVE CYCLE, THAT BALANCE IS TARGETED
            TO BE YOUR CUSHION AMOUNT.
            YOUR ESCROW CUSHION FOR THIS CYCLE IS $2,783.14.

  YOUR PROJECTED ESCROW BALANCE CONSISTS OF THE FOLLOWING DETAIL (AN * NEXT TO AN AMOUNT INDICATES
  THIS IS A TOTAL THAT REPRESENTS MORE THAN ONE PAYMENT TO OR DISBURSEMENT FROM ESCROW):

**Escrow payments up to escrow analysis effective date:**
10/19    $1,161.05         11/19     $1,204.26        12/19    $49,944.67*

**Escrow disbursements up to escrow analysis effective date:**
01/23      $799.69    HOMEOWNERS INSURANC


-VERBAL INQUIRIES & COMPLAINTS-
For verbal inquiries and complaints about your mortgage loan, please contact the CUSTOMER SERVICE DEPARTMENT
for Carrington Mortgage Services, LLC, by calling 1-800-561-4567. The CUSTOMER SERVICE DEPARTMENT for
Carrington Mortgage Services, LLC is toll free and you may call from 8:00 a.m. to 8:00 p.m. Eastern Time,
Monday through Friday. You may also visit our website at https://carringtonmortgage.com/.

-IMPORTANT BANKRUPTCY NOTICE-
If you have been discharged from personal liability on the mortgage because of bankruptcy
proceedings and have not reaffirmed the mortgage, or if you are the subject of a pending
bankruptcy proceeding, this letter is not an attempt to collect a debt from you but merely
provides informational notice regarding the status of the loan.  If you are represented by
an attorney with respect to your mortgage, please forward this document to your attorney.


-CREDIT REPORTING AND DIRECT DISPUTES-
We may report information about your account to credit bureaus. Late payments, missed payments,
or other defaults on your account may be reflected in your credit report.  As required by law,
you are hereby notified that a negative credit report reflecting on your credit record may be
submitted to a credit reporting agency if you fail to fulfill the terms of your credit
obligations. If you have concerns regarding the accuracy of any information contained in a
consumer report pertaining to this account, you may send a direct dispute to Carrington
Mortgage Services, LLC by fax to 800-486-5134 or in writing to Carrington Mortgage Services,
LLC, and Attention: Customer Service, P.O. Box 5001, Westfield, IN 46074. Please include your
loan number on all pages of the correspondence.

-MINI MIRANDA-
This communication is from a debt collector and it is for the purpose of collecting a debt and
any information obtained will be used for that purpose. This notice is required by the
provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting
to collect money from anyone who has discharged the debt under the bankruptcy laws of the
United States.

-HUD COUNSELOR INFORMATION-
If you would like counseling or assistance, you may obtain a list of HUD-approved homeownership
counselors or counseling organizations in your area by calling the HUD nationwide toll-free
telephone number at (800) 569-4287 or toll-free TDD (800) 877-8339, or by going to
http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm. You can also contact the CFPB at (855) 411-2372, or
by going to www.consumerfinance.gov/find-a-housing-counselor.

-EQUAL CREDIT OPPORTUNITY ACT NOTICE-
The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit
applicants on the basis of race, color, religion, national origin, sex, marital status, or age
(provided the applicant has the capacity to enter into a binding contract); because all or part
of the applicant's income derives from any public assistance program; or because the applicant
has, in good faith, exercised any right under the Consumer Credit Protection Act. The Federal
Agency that administers Carrington Mortgage Services, LLC's compliance with this law is the
Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

-SCRA DISCLOSURE-
MILITARY PERSONNEL/SERVICEMEMBERS:    If you or your spouse is a member of the military, please contact us
immediately.  The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections
and benefits to eligible military service personnel, including protections from foreclosure as well as interest
rate relief.  For additional information and to determine eligibility please contact our Military Assistance Team
toll free at 1-888-267-5474.

-NOTICES OF ERROR AND INFORMATION REQUESTS, QUALIFIED WRITTEN REQUESTS (QWR)-
Written complaints and inquiries classified as Notices of Error and Information Requests or QWRs must be submitted
to Carrington Mortgage Services, LLC by fax to 800-486-5134, or in writing to Carrington Mortgage Services, LLC,
and Attention: Customer Service, P.O. Box 5001, Westfield, IN 46074.  Please include your loan number on all pages
of the correspondence.  You have the right to request documents we relied upon in reaching our determination.  You
may request such documents or receive further assistance by contacting the CUSTOMER SERVICE DEPARTMENT for
Carrington Mortgage Services, LLC toll free at (800) 561-4567, Monday through Friday, 8:00 a.m. to 8:00 p.m.
Eastern Time. You may also visit our website at https://carringtonmortgage.com/

Prepared by: THOMAS MCGEE

# ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| JULY 25, 2007 | PHILADELPHIA | PENNSYLVANIA |
|---|---|---|
| [Date] | [City] | [State] |

6491 WOODBINE AVE, PHILADELPHIA, PA 19151-2406
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 613,000.00         (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
Countrywide Home Loans, Inc. dba America's Wholesale Lender                  .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    10.980   %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the  first          day of each month beginning on
SEPTEMBER 01, 2007 . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  AUGUST 01, 2037      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 5,828.48          . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the  first          day of AUGUST, 2009    , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX & ONE-HALF           percentage point(s) (   6.500   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**PENNSYLVANIA ADJUSTABLE RATE NOTE - LIBOR INDEX - Single Family**
● BC - ARM Note

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    12.480 % or less than 10.980 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE & ONE-HALF            percentage point(s) (   1.500 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than   17.980 % or less than   10.980 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

If the original Principal amount of this loan is $50,000 or less, I may make a Full or Partial Prepayment without paying a penalty. However, if the original Principal amount of this Note exceeds $50,000,

[X] I may prepay this Note in full at any time without penalty.

[ ] If within the first                    months after the execution of the Note, I make any prepayment(s) within any 12-month period, the total of which exceeds 20 percent (20%) of the original principal amount of this loan, I will pay a prepayment penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds 20 percent (20%) of the original principal amount of the loan.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    FIFTEEN         calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.


BC - ARM Note

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____     -Borrower
THOMAS C. STAFFORD

_____     -Borrower

_____     -Borrower

_____     -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS, INC., A NEW YORK CORPORATION
DOING BUSINESS AS AMERICA'S WHOLESALE LENDER
WITHOUT RECOURSE
BY: _____
MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

**CARRINGTON**
MORTGAGE SERVICES, LLC

P.O. Box 3010 | Anaheim, CA 92803

**Final Loan Modification Agreement**

**Mortgagor Name(s)**
THOMAS C STAFFORD
6491 WOODBINE AVE
PHILADELPHIA     PA 19151

**Property Address:**
6491 WOODBINE AVE
PHILADELPHIA     PA 19151

Dear Mortgagor(s):

Carrington Mortgage Services, LLC, as servicer and authorized agent of THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2007-12 (the "Lender"), is offering you this Loan Modification Agreement ("Agreement"), dated 09/03/19, which modifies the term of your existing mortgage loan as described in detail below.

## I. DEFINITIONS

**"Mortgage"** shall mean the mortgage, deed of trust, security deed or other security instrument encumbering the Property and corresponding to the above CMS Loan Number and recorded in the public records of PHILADELPHIA County.

**"Note"** shall mean the note or other instrument of the same date and secured by the Mortgage.

**"Property"** shall mean the real and personal property described in the Mortgage and located at:

6491 WOODBINE AVE
PHILADELPHIA     PA 19151

**"Balloon Payment"** shall mean a final payment of the aggregate total amount of the current and any prior deferred non-interest bearing principal balance plus the then-outstanding interest bearing principal balance plus all earned interest remaining unpaid and due on the earlier of (i.) the date you sell the property securing the Mortgage, (ii.) the date you refinance the loan, (iii.) the date the loan is paid in full, or (iv.) the Maturity Date

**"Deferment"** shall mean any portion of the unpaid principal balance of the Note and Security Instrument that has been deferred, interest free, and shall only become payable on the earlier of (i.) the date you sell the property securing the Mortgage, (ii.) the date you refinance the loan, (iii.) the date the loan is paid in full, or (iv.) the Maturity Date.

**"Write Off"**, as referenced in this agreement, includes any of the following (i.) unpaid and deferred interest, (ii.) deferred principal, (iii.) escrow advances, (iv.) administrative fees, (v.) unpaid late fees, or other costs that have been forgiven and waived from your account and shall not be subject to any collection efforts by CMS.

CARRINGTON
MORTGAGE SERVICES, LLC
NMLS ID #2600

P.O. Box 3010 | Anaheim, CA 92803

## Final Loan Modification Agreement

## II. TERMS AND CONDITIONS

If your representations and covenants in Section 1 continue to be true in all material respects, then this Loan Modification Agreement ("Agreement") will, as set forth in Section III, amend and supplement (i.) the Mortgage on the Property, and (ii.) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **Representations and Covenants.** You certify, represent to Lender, covenant and agree:

    A. You are experiencing a financial hardship, and as a result, (i.) you are in default under the Loan Documents or default is imminent, and (ii.) you do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B. At least one of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

    C. There has been no impermissible change in the ownership of the Property since you signed the Loan Documents. A permissible change would be any transfer that the Lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D. You have provided documentation for **all** income that your household receives;

    E. Under penalty of perjury, all documents and information you have provided to the Lender in connection with this Agreement, including the documents and information regarding your eligibility for the Program, are true and correct;

2. **Acknowledgements and Preconditions to Modification.** You understand and acknowledge that:

    A. If prior to the Modification Effective Date as set forth in Section III, the Lender determines that any of the representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents.

    B. The Loan Documents will not be modified unless (i.) The Lender receives an executed copy of this Agreement bearing your signature, on or prior to the last business day of the same month in which the Effective Date falls and (ii.) the Modification Effective Date (as defined in Section III) has occurred. You further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if you fail to meet any one of the requirements under this Agreement.

    C. You agree that failure to pay the initial payment due on **10/01/2019** (the "First Payment Due Date") shall be considered a breach of this Agreement and this Agreement will terminate. The Lender shall immediately resume any pending foreclosure action or proceeding. A new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will not be necessary to continue the foreclosure action ("Foreclosure Notices"). You waive any and all rights to receive such Foreclosure Notices to the extent permitted by applicable law.

    D. You have been advised to discuss the ramifications of this Agreement with your attorney and/or tax/financial advisor if any of the following (i.) unpaid and deferred interest, (ii.) deferred principal, (iii.) escrow advances, (iv.) administrative fees, (v.) unpaid late fees, or other costs have been forgiven and waived from the account and shall not be subject to any collection efforts by CMS.

**CARRINGTON**
MORTGAGE SERVICES, LLC

P.O. Box 3010 | Anaheim, CA 92803

## Final Loan Modification Agreement

### III. MODIFICATION TERMS

If your representations and covenants in Section II.1 continue to be true in all material respects and all preconditions to the modification set forth in Section II.2 have been met, the Loan Documents will automatically become modified on **09/01/2019** (the "Modification Effective Date"). You agree to and understand the following:

A.  The Maturity Date of your modified loan is **08/01/2037**.

B.  The new interest bearing principal balance of your loan is **$841,776.09** ("Modified Balance").

C.  Interest at the rate of **4.12500%** will begin to accrue on your loan as of **09/01/2019.**

D.  The new total monthly payment including principal, interest, property taxes, hazard insurance, and any other applicable escrow items is **$6,588.10** and is due on **10/01/2019**

E.  Unpaid amounts totaling **$266,652.08** were added to your modified principal balance which included unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, less any amounts paid to the Lender but not previously credited to your Loan.

F.  **$0.00** of your unpaid principal balance has been deferred ("New Deferment"). The New Deferred Principal Balance remains non-interest bearing and shall become due and payable as a Balloon Payment on the earlier of: (i.) the date you sell the property securing the Mortgage, (ii.) the date you refinance the loan, (iii.) the date the entire loan is paid in full, or (iv.) the Maturity Date.

G.  If your loan was previously modified and the terms of such modification included a prior deferment of non-interest bearing unpaid principal balance, the prior non-interest bearing deferred unpaid principal balance is taken into consideration when calculating the new modified interest bearing principal balance. Our records indicate that you had a prior deferment of non-interest bearing unpaid principal balance in the amount of **$0.00** ("Prior Deferment(s)").

H.  **$0.00** will be written off which constitutes a forgiveness of debt and you will not be required to repay this amount.

| CURRENT LOAN TERMS | |
|---|---|
| Interest Rate | 10.98000 |
| P&I Payment | $5,828.48 |
| Escrow Payment | $1,350.37 |
| Total Monthly Payment | $7,178.85 |
| Contractual Due Date | 05/01/16 |

| MODIFIED LOAN TERMS | |
|---|---|
| Interest Rate | 4.12500 |
| P&I Payment | $5,427.05 |
| *Escrow Payment | $1,161.05 |
| Total Monthly Payment | $6,588.10 |
| 1st Payment Due Date | 10/01/19 |
| Unpaid Amounts | $266,652.08 |

| | |
|---|---|
| Principal Balance | $575,124.01 |
| **Prior Deferred Principal Balance | $0.00 |
| Total Principal Balance | $575,124.01 |
| | |

| | |
|---|---|
| Modified Balance | $841,776.09 |
| New Deferred Principal Balance | $0.00 |
| New Principal Balance | $841,776.09 |
| Balloon Payment | $37,471.52 |

*Escrow payments may be adjusted periodically in accordance with applicable law and therefore your total monthly payment may change accordingly. If you did not have an escrow account before, the timing of your tax and insurance bills may require that you make a payment to cover any such bills when they come due. This is known as an escrow shortage and can either be paid in a lump sum in the amount of **$0.00** when the loan is modified or over the next 60-months in the amount of **$0.00** per month which has already been included in the above Escrow Payment amount.

CARRINGTON
MORTGAGE SERVICES, LLC
P.O. Box 3010 | Anaheim, CA 92803

**Any non-interest bearing unpaid principal balance that was previously deferred has been added to the interest bearing unpaid principal balance and taken into consideration when calculating current Loan Modification terms.

## IV. ADDITIONAL AGREEMENTS AND LEGAL NOTICES

1. You agree to the following:

A. You will be in default if you do not comply with the terms of the Loan Documents, as modified by this Agreement.

B. By accepting this Loan Modification your credit score may be adversely affected. The impact of a permanent modification on a credit score depends on your entire credit profile. For more information, please visit: http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.

C. The modified interest rate and principal and interest portion of your modified payment will remain fixed until the original Maturity Date of your loan.

D. If you still owe any amounts under the Loan Documents due to any applicable Deferment and/or increase in the amortization period, you will be responsible to pay those amounts as a Balloon Payment.

E. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

F. Any fees and/or expenses incurred in connection with servicing your loan that may be legally charged to your account, but have not been charged to your account as of the Modification Effective Date, may be charged to your account at a later date and shall be your responsibility to pay in full. For example, if your loan is in foreclosure there may be foreclosure fees and costs that have been incurred but not yet assessed to your account as of the Modification Effective Date; you will remain liable for any such costs, fees and/or expenses.

G. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that you previously entered into with Lender or any prior lender.

H. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including your agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of your Loan.

I. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and you have been advised of the amount needed to fully fund your escrow account.

J. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

K. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and you will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

CARRINGTON
MORTGAGE SERVICES, LLC

P.O. Box 3010 | Anaheim, CA 92803

**Final Loan Modification Agreement**

L.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

M.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give you notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which you must pay all sums secured by the Mortgage. If you fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on you.

N.  That, as of the Modification Effective Date, you understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of your property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

O.  You understand that you are not required to waive or release any claims and/or defenses in connection with this Agreement

P.  That you will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and notwithstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

Q.  That you will execute such other documents as may be reasonably necessary to either (i.) consummate the terms and conditions of this Agreement; or (ii.) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. You understand that either a corrected Agreement or a letter agreement containing the correction will be provided to you for your signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If you elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement.

R.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

S.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, you will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. All documents the Lender requests of you under this Section shall be referred to as "Documents." You agree to deliver the Documents within ten (10) days after you receive the Lender's written request for such replacement.

CARRINGTON

MORTGAGE SERVICES, LLC

P.O. Box 3010 | Anaheim, CA 92803

**Final Loan Modification Agreement**

T. That the mortgage insurance premiums on your Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which you may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

U. If you are currently subject to the protections of any automatic stay in bankruptcy, or have obtained a discharge in bankruptcy proceeding, nothing in this Agreement or any other document executed in connection with this Agreement shall be construed as an attempt by CMS to impose personal liability under the Note and Deed of Trust/Mortgage. Pursuant to 11 U.S.C. Section 524(j), and in the ordinary course of business between the Lender and you, this Agreement is entered into in order to seek or obtain periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien. This Agreement does not revive your personal liability under the Note and Deed of Trust/Mortgage, nor is it an attempt to collect, recover or offset any such debt as a personal liability of Borrower under the Note and Deed of Trust/Mortgage. The Lender does, however, retain the right, despite the discharge, to enforce its security interest against the Subject Real Property by foreclosing in the event of a future default.

In Witness Whereof, the Lender and you have executed this Agreement.

CARRINGTON MORTAGE SERVICES, LLC As servicer and duly authorized agent for THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES/SERIES 2007-12

By: _____
As Attorney in Fact

SEP 1 1 2019
_____
Date

Jill A. Fuller, Vice President, Loss Mitigation,
Carrington Mortgage Services, LLC Attorney in Fact

_____
THOMAS C STAFFORD

09/03/2019
_____
Date

_____
Date

_____
Date

_____[Space Below This Line For Acknowledgement]_____

**CARRINGTON**
MORTGAGE SERVICES, LLC
NMLS ID #2600

P.O. Box 3010
Anaheim, CA 92803

**Date:** 09/03/19                                    **Loan Number:** ████████

# LOAN MODIFICATION AGREEMENT
# BALLOON PAYMENT DISCLOSURE

*Notice: Read Before Signing Your Loan Documents*

Property Address: 6491 WOODBINE AVE PHILADELPHIA      PA 19151

The Loan Modification Agreement ("Agreement") provides for Term Extension (as defined below) and/or deferral of a portion of the principal balance of your Note.

The modified principal balance of your Note will be $841,776.09 (the "New Principal Balance") of which $0.00 shall be deferred (the "Total Deferred Principal Balance"). If your loan was previously modified, this Total Deferred Principal Balance includes prior deferment in the amount of $0.00 plus the New Deferred Principal Balance in the amount of $0.00. You will not be required to pay interest or make monthly payments on the Total Deferred Principal Balance. The New Principal Balance minus the Total Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $841,776.09. Interest at the rate of 4.12500% will begin to accrue on the Interest Bearing Principal Balance as of 09/01/2019.

This Agreement provides for 215 monthly payments of principal and interest, with the initial monthly payment in the amount of $5,427.05. This monthly payment is calculated using a 222-month amortization period from the effective date of this Loan Modification (referred to herein as "Term Extension") while the modified principal balance of your Note and all accrued and unpaid interest must be paid in full no later than the Maturity Date of your original Note. Assuming that all of the monthly payments have been paid exactly on the date that each payment is due, a final balloon payment of the then-outstanding Interest Bearing Principal Balance plus all accrued interest remaining unpaid plus the Total Deferred Principal Balance, which is a total sum of approximately $37,471.52 shall become due and payable on 08/01/2037 (the "Maturity Date").

The amount of Total Deferred Principal Balance and any other amounts still owed under your Loan Documents will result in a balloon payment fully due and payable upon the earliest of: (i) the date you sell the property securing the Mortgage, (ii) the date you refinance the loan, (iii) the date the entire loan is paid in full, or (iv) the Maturity Date.

If you make a partial prepayment of principal, the Lender may apply that partial prepayment first to the Total Deferred Principal Balance before applying such partial prepayment to the Interest Bearing Principal Balance or any other amounts due.

**DO NOT SIGN ANY LOAN DOCUMENTS IF YOU HAVE ANY OUTSTANDING QUESTIONS ABOUT YOUR LOAN PAYMENTS OR THIS BALLOON PAYMENT DISCLOSURE**

THIS LOAN IS PAYABLE IN FULL AT MATURITY OR EARLIER IF ANY ONE OF THE EVENTS DESCRIBED ABOVE OCCURS. YOU MUST REPAY THE ENTIRE INTEREST BEARING PRINCIPAL BALANCE PLUS ALL ACCRUED AND UNPAID INTEREST THEN DUE PLUS THE TOTAL DEFERRED PRINCIPAL BALANCE. UNLESS OTHERWISE EXPRESSLY DISCLOSED IN THE AGREEMENT, THE LENDER IN THIS TRANSACTION IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER WITH WHOM YOU HAVE THIS LOAN, WHO IS WILLING TO LEND YOU THE MONEY. IF THIS LENDER, OR ANY OTHER LENDER, AGREES TO REFINANCE THIS LOAN, YOU MAY BE REQUIRED TO PAY THE THEN-PREVAILING INTEREST RATE, WHICH MAY BE HIGHER OR LOWER THAN THE INTEREST RATE SPECIFIED IN THE AGREEMENT. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN, EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

# CARRINGTON
**MORTGAGE SERVICES, LLC**

P.O. Box 3010 | Anaheim, CA  92803

**Final Loan Modification Agreement**

T. That the mortgage insurance premiums on your Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which you may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

U. If you are currently subject to the protections of any automatic stay in bankruptcy, or have obtained a discharge in bankruptcy proceeding, nothing in this Agreement or any other document executed in connection with this Agreement shall be construed as an attempt by CMS to impose personal liability under the Note and Deed of Trust/Mortgage. Pursuant to 11 U.S.C. Section 524(j), and in the ordinary course of business between the Lender and you, this Agreement is entered into in order to seek or obtain periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien. This Agreement does not revive your personal liability under the Note and Deed of Trust/Mortgage, nor is it an attempt to collect, recover or offset any such debt as a personal liability of Borrower under the Note and Deed of Trust/Mortgage. The Lender does, however, retain the right, despite the discharge, to enforce its security interest against the Subject Real Property by foreclosing in the event of a future default.

In Witness Whereof, the Lender and you have executed this Agreement.

CARRINGTON MORTGAGE SERVICES, LLC As servicer and duly authorized agent for
THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED
HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2007-12

By: _____

    As Attorney in Fact

                                 THOMAS C STAFFORD

                                 9/5/2019

_____

    Date                                 Date

                                   _____

                                   Date

_____[Space Below This Line For Acknowledgement]_____

**CARRINGTON**
MORTGAGE SERVICES, LLC

P.O. Box 3010 | Anaheim, CA 92803

**Carrington Mortgage Services, LLC (CMS)**
**Name Affidavit**

Dear Mortgagor(s):

Carrington Mortgage Services, LLC (CMS) requires that you complete this Name Affidavit if your name has been changed since the origination of your mortgage loan and/or does not match the name as it appears directly below and within the enclosed Documents.

**A Name Affidavit is also referred to as:**
Also Known As Certificate / AKA Statement – To show variations of your name used to execute other documents
Now Known As Certificate / NKA Statement – To show a change in name due to marriage and/or divorce

**THOMAS C STAFFORD**

_____
Signature

THIS IS TO CERTIFY THAT MY/OUR LEGAL SIGNATURE(S) IS/ARE AS WRITTEN AND TYPED BELOW. This signature must exactly match signatures on all Documents.

I, **THOMAS C STAFFORD,** certify that I am also known as:

_____
Print Name (Variation)

_____
Sample Signature (Variation)

_____
Print Name (Variation)

_____
Sample Signature (Variation)



# ORIGINAL



Countrywide Hc......   003
dba America's Wholesale
Lender
2 JERICHO PLAZA, 3RD FLOOR
JERICHO
NY 11753

**CONSTITUTION ABSTRACT CO., INC.**
2617 South 21st Street
Philadelphia, PA 19145

Phone: (516)733-6000
After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Parcel Number:

Premises:
6491 WOODBINE AVE
PHILADELPHIA
PA 19151-2406

**51756506**
Page: **1 of 22**
08/18/2007 01:23PM

This Document Recorded
08/18/2007
01:23PM
Doc Code: M     Commissioner of Records, City of Philadelphia

Doc Id: 51756506
Receipt #:
Rec Fee: 126.50

---------- [Space Above This Line For Recording Data] ----------

STAFFORD
[Escrow/Closing #]

[Doc ID #]

# MORTGAGE

**PENNSYLVANIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 17

VMP®-6A(PA) (0508)     CHL (10/05)(d)   VMP Mortgage Solutions, Inc. (800)521-7291     **Form 3039 1/01**





DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated JULY 25, 2007                    ,
together with all Riders to this document.

(B) **"Borrower"** is

THOMAS C STAFFORD

Borrower is the mortgagor under this Security Instrument.

(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) **"Lender"** is

Countrywide Home Loans, Inc. dba America's Wholesale Lender

Lender is a
CORPORATION

organized and existing under the laws of NEW YORK                    .
Lender's address is
4500 Park Granada MSN# SVB-314
Calabasas, CA 91302-1613

(E) **"Note"** means the promissory note signed by Borrower and dated JULY 25, 2007            .
The Note states that Borrower owes Lender
SIX HUNDRED THIRTEEN THOUSAND and 00/100

Dollars (U.S. $ 613,000.00            ) plus interest. Borrower has promised to pay this debt in regular

DOC ID #

Periodic Payments and to pay the debt in full not later than AUGUST 01, 2037 .

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider
[ ] Balloon Rider    [ ] Planned Unit Development Rider    [ ] 1-4 Family Rider
[ ] VA Rider    [ ] Biweekly Payment Rider    [ ] Other(s) [specify]

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

DOC ID #: ▮▮▮▮▮▮▮▮▮

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

               COUNTY            of            PHILADELPHIA      :

       [Type of Recording Jurisdiction]             [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of
                6491 WOODBINE AVE, PHILADELPHIA     ,
                         [Street/City]
Pennsylvania 19151-2406 ("Property Address"):
     [Zip Code]

      TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

      BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

DOC ID #

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

DOC ID #:

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

DOC ID #: ▮▮▮▮▮▮▮▮▮▮▮

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If

DOC ID #:

Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is

DOC ID #: ███████████

completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan

DOC ID #: ███████████

is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or

DOC ID #: ▓▓▓▓▓▓▓▓▓▓

repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of

DOC ID #:

Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by

DOC ID #:

this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency,

DOC ID #:
instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

DOC ID #: ████████

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

DOC ID #: ███████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
THOMAS C STAFFORD                                        -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

DOC ID #: [REDACTED]

**COMMONWEALTH OF PENNSYLVANIA,**

County ss:

On this, the _25TH_ day of _July_ _2007_, before me, the undersigned officer, personally appeared

_Thomas C. Stafford_

_____ known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires:

_Natalie S. Brantley_

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
NATALIE L. BRANTLEY, Notary Public
City of Philadelphia, Phila. County
My Commission Expires June 1, 2010

Title of Officer

**Certificate of Residence**

I, _Francesca Gentile_ , do hereby certify that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this _25th_ day of _July, 2007_ .

_Francesca Gentile_

Agent of Mortgagee

DOC ID #: ▮▮▮▮▮▮▮▮▮▮

# ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this TWENTY-FIFTH day of
JULY, 2007     , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the
same date given by the undersigned (the "Borrower") to secure Borrower's Note to
Countrywide Home Loans, Inc. dba America's Wholesale Lender

(the "Lender") of the same date and covering the property described in the Security Instrument and
located at:

6491 WOODBINE AVE, PHILADELPHIA, PA 19151-2406

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**MULTISTATE ADJUSTABLE RATE RIDER - LIBOR INDEX** - Single Family
CONV
● BC - ARM Rider
1U193-US (12/05)(d)               Page 1 of 4





DOC ID #: ▐▐▐▐▐▐▐▐▐▐▐▐▐▐
## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of   10.980 %.  The  Note  provides  for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the first                 day of
AUGUST, 2009          , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding
SIX & ONE-HALF                percentage point(s) (   6.500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
### (D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than
  12.480 % or less than    10.980 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE & ONE-HALF
percentage point(s) (    1.500 %) from the rate of interest I have been paying for the preceding six  months.  My  interest  rate  will  never  be  greater  than    17.980   % or less than   10.980 %.
### (E) Effective Date of Changes
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly  payment beginning on the first monthly payment date after the Change Date until the amount of my monthly  payment changes again.

CONV
● BC - ARM Rider
1U193-US (12/05)              Page 2 of 4

DOC ID #: 

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CONV
● BC - ARM Rider
1U193-US (12/05)                    Page 3 of 4

DOC ID #:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
THOMAS C. STAFFORD                - Borrower

_____ (Seal)
                                  - Borrower

_____ (Seal)
                                  - Borrower

_____ (Seal)
                                  - Borrower

CONV
• BC - ARM Rider
1U193-US (12/05)                  Page 4 of 4

### SCHEDULE "C"

**Commitment Number:** ███████

_____

The land referred to in this Commitment is described as follows:

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, in the 34th Ward of the City of Philadelphia and described according to a Survey thereof made on the 3rd day of November, 1911, by Joseph Johnson, Esquire, Surveyor and Regulator of the 11th District as follows, to wit:

SITUATE on the Northwest side of Woodbine Avenue and the Northeast side of 66th Street, in the 34th Ward of the City of Philadelphia.

BEGINNING at the intersection of the Northwest line of Woodbine Avenue with the Northeast line of 66th Street; thence extending Northeastward along the Northwest side of Woodbine Avenue, 164.707 feet; thence extending Northwestward on a line at right angles with Woodbine Avenue 150 feet; thence extending Southwestward on a line parallel with Woodbine Avenue, 172.626 feet to the Northeast side of 66th Street and thence extending Southeastward along the Northeast side of 66th Street, 150.209 feet to the place of beginning.

BEING NO. 6491 Woodbine Avenue

PLAN/PARCEL NO. ███████

eRecorded in Philadelphia PA   Doc Id: 52496698
06/15/2012 09:39AM        Receipt#:
Page 1 of 2               Rec Fee: $198.00
Commissioner of Records  Doc Code: A
State RTT:    Local RTT:

Recording Requested By:
**Bank of America**
Prepared By:
**Bank of America**
**800-444-4302**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**

Property Address:
**6491 WOODBINE AVE**
**PHILADELPHIA, PA, PA 19151**
Property Location:
**City of PHILIDELPHIA**

This space for Recorder's use

MERS Phone #:

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2007-12** whose address is **C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Original Lender:     **COUNTRYWIDE HOME LOANS, INC. DBA AMERICA'S WHOLESALE LENDER**

Mortgagor(s):        **THOMAS C STAFFORD**

Date of Mortgage:    7/25/2007      Original Loan Amount:   **$613,000.00**

Recorded in Philadelphia County, PA on: 8/18/2007, book N/A, page N/A and instrument number 51756506

This Mortgage has not been assigned unless otherwise stated below:

Property Legal Description:
**THE LAND REFERRED TO IN THIS COMMITMENT IS DESCRIBED AS FOLLOWS; ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, IN THE 34TH WARD OF THE CITY OF PHILADELPHIA AND DESCRIBED ACCORDING TO A SURVEY THEREOF MADE ON THE 3RD DAY OF NOVEMBER,1911, BY JOSEPH JOHNSON, ESQUIRE, SURVEYOR AND REGULATOR OF THE 11TH DISTRICT AS FOLLOWS, TO WIT: SITUATE ON THE NORTHWEST SIDE OF WOODBINE AVENUE AND THE NORTHEAST SIDE OF 66TH STREET, IN THE 34TH WARD OF THE CITY OF PHILADELPHIA. BEGINNING AT THE INTERSECTION OF THE NORTHWEST LINE OF WOODBINE AVENUE WITH THE NORTHEAST LINE OF 66TH STREET; THENCE EXTENDING NORTHEASTWARD ALONG THE NORTHWEST SIDE OF WOODBINE AVENUE, 164.707 FEET; THENCE EXTENDING NORTHWESTWARD ON A LINE AT RIGHT ANGLES WITH WOODBINE AVENUE 150 FEET; THENCE EXTENDING SOUTHWESTWARD ON A LINE PARALLEL WITH THE WOODBINE AVENUE, 172.626 FEET TO THE NORTHEAST SIDE OF 66TH STREET AND THENCE EXTENDING SOUTHEASTWARD ALONG THE NORTHEAST SIDE OF 66TH STREET, 150.209 FEET TO THE PLACE OF BEGINNING. BEING NO. 6491 WOODBINE AVENUE PLAN/PARCEL NO. 68 N**

610    177384537    D8    001    002

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
<u>JUN 1 2 2012</u>

> MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
> INC.
>
> By: *Debbie Nieblas*
>
> DEBBIE NIEBLAS
> Assistant Secretary

State of California
County of Ventura
**JUN 1 2 2012**

On _____, before me, ___ Roudabeh Beygzadeh-Elias _____, Notary Public, personally appeared
___ **Debbie Nieblas** ___

, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity
(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

```
ROUDABEH BEYGZADEH-ELIAS
Commission # 1939621
Notary Public - California
Los Angeles County
My Comm. Expires Jun 4, 2015
```

Notary Public: ___ Roudabeh Beygzadeh-Elias ___ (Seal)
My Commission Expires: ___ June 4, 2015 ___

I hereby certify that the address of the within named assignee is:
C/O BAC, M/C: ▮▮▮▮▮▮▮ Tapo Canyon Road, Simi Valley, CA 93063

*Debbie Nieblas*

**Signature**

Recording Requested By:
**Bank of America**
Prepared By:
**Bank of America**
**800-444-4302**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**



Property Address:
**6491 WOODBINE AVE**
**PHILADELPHIA, PA, PA 19151**
Property Location:
**City of PHILIDELPHIA**

This space for Recorder's use

MERS Phone #:

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2007-12** whose address is **C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Original Lender:  **COUNTRYWIDE HOME LOANS, INC. DBA AMERICA'S WHOLESALE LENDER**

Mortgagor(s):  **THOMAS C STAFFORD**

Date of Mortgage:  **7/25/2007**    Original Loan Amount:  **$613,000.00**

Recorded in Philadelphia County, PA on: 8/18/2007, book N/A, page N/A and instrument number **51756506**

This Mortgage has not been assigned unless otherwise stated below:

Property Legal Description:
**THE LAND REFERRED TO IN THIS COMMITMENT IS DESCRIBED AS FOLLOWS; ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, IN THE 34TH WARD OF THE CITY OF PHILADELPHIA AND DESCRIBED ACCORDING TO A SURVEY THEREOF MADE ON THE 3RD DAY OF NOVEMBER,1911, BY JOSEPH JOHNSON, ESQUIRE, SURVEYOR AND REGULATOR OF THE 11TH DISTRICT AS FOLLOWS, TO WIT: SITUATE ON THE NORTHWEST SIDE OF WOODBINE AVENUE AND THE NORTHEAST SIDE OF 66TH STREET, IN THE 34TH WARD OF THE CITY OF PHILADELPHIA. BEGINNING AT THE INTERSECTION OF THE NORTHWEST LINE OF WOODBINE AVENUE WITH THE NORTHEAST LINE OF 66TH STREET; THENCE EXTENDING NORTHEASTWARD ALONG THE NORTHWEST SIDE OF WOODBINE AVENUE, 164.707 FEET; THENCE EXTENDING NORTHWESTWARD ON A LINE AT RIGHT ANGLES WITH WOODBINE AVENUE 150 FEET; THENCE EXTENDING SOUTHWESTWARD ON A LINE PARALLEL WITH THE WOODBINE AVENUE, 172.626 FEET TO THE NORTHEAST SIDE OF 66TH STREET AND THENCE EXTENDING SOUTHEASTWARD ALONG THE NORTHEAST SIDE OF 66TH STREET, 150.209 FEET TO THE PLACE OF BEGINNING. BEING NO. 6491 WOODBINE AVENUE PLAN/PARCEL NO. 68 N**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on **JUN 1 2 2012**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _Debbie Nieblas_

~~DEBBIE NIEBLAS~~

~~Assistant Secretary~~

State of **California**
County of **Ventura**
**JUN 12 2012**                           Roudabeh Beygzadeh-Elias
On _____ before me, _____, Notary Public, personally appeared
_**Debbie Nieblas**_

, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

ROUDABEH BEYGZADEH-ELIAS
Commission # 1939621
Notary Public - California
Los Angeles County
My Comm. Expires Jun 4, 2015

Notary Public: _____ Roudabeh Beygzadeh-Elias _____       (Seal)
My Commission Expires: _____ June 4, 2015 _____

I hereby certify that the address of the within named assignee is:
C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063

_Debbie Nieblas_

**Signature**